UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

CLIFFORD R. ROBINSON,

                              Plaintiff,

          v.

ISLER & CO., L.L.C., et al.,

                            Defendants.

No. CV 05-705-MO

OPINION AND ORDER

**MOSMAN, J.,**

      Plaintiff Clifford Robinson brought this action against his accountants, defendants Dale Glasser and Isler & Co. ("Isler"), pursuant to 28 U.S.C. § 1332 complaining of breach of contract, breach of fiduciary duty, and fraud, among other claims, and seeking an accounting for the entire period of the parties' relationship.  Currently before the court are the parties' cross motions for partial summary judgment related to the accounting claim.  Defendants seek summary judgment for 1997 through 2004, arguing Mr. Robinson was provided an adequate accounting and therefore his claim is moot.  Mr. Robinson moves for partial summary judgment as to whether he is entitled to an accounting for the years 1989 through 1996.  For the reasons that follow, defendants' motion (#44) is GRANTED and Mr. Robinson's motion (#28) is DENIED.

PAGE 1 - OPINION AND ORDER

## BACKGROUND

Mr. Robinson paid Dale Glasser for his accounting services from 1989 until October 15, 2004.  Mr. Glasser's duties included preparing Mr. Robinson's tax returns, paying bills on Mr. Robinson's behalf, and other various tasks related to Mr. Robinson's finances.  In short, Mr. Glasser and Isler, after Mr. Glasser joined Isler in 1997, were Mr. Robinson's fiduciaries. As fiduciaries they have a duty to account for money that Mr. Robinson entrusted to them.  From 1997 through October 15, 2004, Mr. Robinson entrusted defendants with approximately $20.9 million dollars.  In April 2004, Isler shipped six boxes of documents relating to Mr. Robinson's finances to CPA's in Mr. Robinson's employ.  Later, in November of 2004, defendants provided Mr. Robinson with six computer disks containing Quick Book reports covering the aforementioned time period and allowed Mr. Robinson's lawyers to review eleven boxes of documents maintained at Isler's offices.  These reports detailed transactions involving Mr. Robinson's bank accounts.  The above facts are undisputed.  What is disputed, however, is how far back the duty to account goes, and whether the Quick Book reports constitute an accounting for the years the reports covered.

## DISCUSSION

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Evaluating whether a genuine issue of material fact exists requires the court to view the record in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  If the movant initially shows that no genuine

PAGE 2 - OPINION AND ORDER

issue exists for trial, the non-movant cannot then rest on the pleadings but must respond with evidence setting "forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

      1.)   <u>Defendants' Motion</u>

      Defendants seek judgment as a matter of law as to whether they provided an adequate accounting for the years 1997-2004. An accounting is "a bookkeeping process whereby debits and credits are balanced or a balance of mutual accounts is struck." *Carey v. Hays*, 409 P.2d 899, 902 (Or. 1966). More specifically, an accountant acts as an agent and his duty to account "ordinarily includes . . . a duty of keeping an accurate record of the persons involved, of the dates and amounts of things received, and of payments made." *Restatement (Second) of Agency* § 382 cmt. a; *In re Niles*, 106 F.3d 1456, 1461 n.4 (9th Cir. 1997) ("fiduciary was under a duty to render an account that should show in detail the items expended and show when, to whom, and for what purposes the payments were made"). Trustees can also owe a duty to account, which includes the higher obligation "of showing that the account which he renders and the expenditures which he claims to have made were correct, just and necessary." *Wood v. Honeyman*, 169 P.2d 131, 162 (Or. 1946) (internal quotation marks and citation omitted). The difference between these obligations is due in large part to the fact that "the principal has a right to make reasonable inspection of the books of account and memoranda, including the original entries, belonging to the agent and kept by him in conducting the affairs of the principal," *Restatement (Second) of Agency* § 382 cmt. b, and that the agent, unlike the trustee, is

PAGE 3 - OPINION AND ORDER

"continuous[ly] subject[ed] to the will of the principal." *Restatement (Third) of Agency* § 1 cmt.

b. In short, "[t]he duties of a trustee are more rigorous than those of most other fiduciaries,"

including accountants. *Restatement (Third) of Trusts* § 2 cmt. b.

Here, defendants sent six boxes of documents to Mr. Robinson's CPA's, allowed Mr.

Robinson's lawyers to review 11 boxes of documents maintained at Isler's offices, and provided

Mr. Robinson with six computer disks containing Quick Book reports covering accounting

activity from 1997 to October 15, 2004. These reports include the starting and ending balances

for each bank account for which Mr. Glasser maintained some responsibility. Also included was

each deposit into and expenditure from these accounts and the corresponding date, transaction

number, amount, payee, resulting balance, and sometimes the reason for the transaction. The

reports also list transactions by subject matter, including interest income, accounting fees,

automobile purchases, and child support, among other subjects.

Mr. Robinson contends the documents and reports provided by defendants do not

constitute an accounting because they do not demonstrate that all expenditures made were

appropriate. Mr. Robinson, through his CPA, attempts to support this argument by pointing to

specific transactions "without sufficient evidence to demonstrate for whose benefit the money

was spent (e.g. transactions without any invoices or receipts associated with them)." *See* Gilbert

Decl., Ex. 1 (copies of exemplar checks for various purchases). Mr. Robinson also argues

defendants failed to provide backup information, which Mr. Robinson believes a proper

accounting requires.

These assertions, however, are not supported by the law relating to accountants. First, as

accountants, defendants' relationship with Mr. Robinson was that of agents to a principle. "An

agency is created by the consent of principal and agent [and] may be terminated at the will of either." *Restatement (Third) of Trusts* § 5 cmt. e. That is how the relationship between Mr. Robinson was created and terminated. Moreover, "an agent is not a trustee and is subject to rules of the law of agency." *Id.* Thus, defendants, as agents, do not have a duty to provide evidence demonstrating Mr. Robinson benefitted from all the transactions. That duty is borne by trustees. *Honeyman*, 169 P.2d at 162. Second, in defendants' reply they include memoranda, receipts, and other evidence showing each and every transaction questioned was made for Mr. Robinson's benefit or at his direction. *See* Glasser Second Decl., Exs. 1-13. This showing is exactly the type of backup information Mr. Robinson claims defendants failed to provide.[1] Thus, because defendants kept and supplied Mr. Robinson with reports detailing "an accurate record of the persons involved, of the dates and amounts of things received, and of payments made" as part of their fiduciary duty, Mr. Robinson received a sufficient accounting for 1997 through October 15, 2004. *Restatement (Second) of Agency* **§** 382 cmt. a.

Additionally, the cases Mr. Robinson relies on are distinguishable. The bulk of the case law he cites relates to trustees. *See Jimenez v. Lee*, 547 P.2d 126 (Or. 1976); *In re Martin's Trust Estate*, 124 N.W.2d 297 (Wis. 1963); *Hill v. Roberts*, 311 S.W.2d 569 (Ky. Ct. App. 1958). Because a trustee is held to a higher standard than other fiduciaries, including accountants like Mr. Glasser, these cases are not instructive in determining the extent of defendants' accounting duty to Mr. Robinson. Furthermore, the type of accounting required in a number of the cases

---

[1]Though neither side has explicitly stated, I assume these memoranda, receipts, and other backup information were either provided in the boxes of information sent to Mr. Robinson's new CPA's, or were among the eleven boxes defendants allowed Mr. Robinson's attorneys to inspect. Thus, Mr. Robinson actually does have, or has access to, a significant amount of the backup information that he asserts defendants have a duty to provide.

cited by Mr. Robinson was defined by statute or partnership agreement. *See Sec'y of State v. Hanover Ins. Co.*, 411 P.2d 89 (Or. 1966); *Adams v. Mason*, 358 S.W.2d 7 (Mo. 1962); *Hill*, 311 S.W.2d at 571. Finally, few, if any, of the cases Mr. Robinson cites involve defendants who were able to provide an accounting as detailed and complete as the one defendants provided to Mr. Robinson. Thus, I grant defendants' motion and find as a matter of law that Mr. Robinson was provided a sufficient accounting for 1997-2004.

    2.    <u>Mr. Robinson's Motion</u>

Mr. Robinson's seeks a judgment as a matter of law that he is also entitled to an accounting for the years 1989-1996. In order to obligate a defendant to account, however, a plaintiff must demonstrate that the defendant received a certain sum of money. *See In re Niles*, 106 F.3d at 1461 n.4; Joel Eichengrun, *Remedying the Remedy of Accounting*, 60 Ind. L.J. 463, 469 (1984/1985) ("the plaintiff must show that some property was entrusted to the defendant's care, so that there is something to account for, and he must also show the amount or value of that property").

Here, Mr. Robinson claims to have entrusted $8,043,123 to Mr. Glasser for the period 1989-1996. This figure was computed by taking Mr. Robinson's gross income, $11,646,620, and subtracting $3,603,497 in federal income tax. Mr. Glasser, on the other hand, disputes that he was entrusted with this amount. Instead, he argues Mr. Robinson personally received and cashed some of the checks and received some income in merchandise. In addition, Mr. Glasser contends that some of Mr. Robinson's income was deposited into bank accounts for which Mr. Glasser had no responsibility, and that in the earlier years of their relationship, Mr. Glasser did not receive bank statements for Mr. Robinson's bank accounts. Finally, Mr. Glasser argues

PAGE 6 - OPINION AND ORDER

that other withholdings, including state and federal taxes, were taken out before Mr. Robinson's

income was paid out, and that other deductions, including third-party judgments, union dues, and

NBA fines, occurred before Mr. Robinson's income was deposited into any bank accounts.

These facts, taken in the light most favorable to defendants as the non-movants, create an issue of

material fact concerning the actual amount entrusted Mr. Glasser during this time period.  Thus,

Mr. Robinson has not met his burden at summary judgment.

Even if, however, Mr. Robinson did meet his burden, Mr. Glasser asserts the affirmative

defense of laches in relation to the 1989-1996 time period.  To establish a latches defense, the

defendant must show: "(1) plaintiff[] delayed asserting [his] claim for an unreasonable length of

time, (2) with full knowledge of all relevant facts (and laches does not start to run until such

knowledge is shown to exist), (3) resulting in such substantial prejudice to defendant that it

would be inequitable for the court to grant relief."  *Mattson v. Commercial Credit Bus. Loans,*

*Inc.*, 723 P.2d 996, 1003 (Or. 1986).  In determining whether a plaintiff has delayed for an

unreasonable length of time, "the courts look to the analogous statutes of limitations."  *Fontana*

*v. Steenson*, 929 P.2d 336, 338 (Or. Ct. App. 1996).  "If the action is commenced after the

expiration of the analogous statute of limitations, the plaintiff must prove the absence of laches."

*Id.*  Thus, in those circumstances, "there is a rebuttable presumption that the elements of laches

have been sufficiently proven."  *Id.*

When laches begins to run is determined by when plaintiff has actual knowledge of a

violation or "or is chargeable with knowledge []he might have obtained upon inquiry if []he had

knowledge of facts which would have put a duty to inquire on a person of ordinary intelligence."

*Nyman v. City of Eugene*, 574 P.2d 332, 340 (Or. Ct. App. 1977), *aff'd on other grounds*, 593

P.2d 515 (Or. 1979); *see also Collins v. Rathbun*, 604 P.2d 441, 446 (Or. Ct. App. 1979) ("the period for the application of laches commences when a plaintiff could have, through the exercise of due diligence, become aware or actually did become aware of a threatened violation, whichever comes first"). "As a general matter, a defendant may prove the third element of laches by showing that a plaintiff's delay caused the loss of critical documentary evidence." *Fontana*, 929 P.2d. at 339; *see also Hanns v. Hanns*, 423 P.2d 499, 513 (Or. 1967) ("Loss or obscuration of evidence is sufficient prejudice to cause a denial of equitable relief . . . .").

The analogous statute of limitations in this case is the six-year time limit for breach of contract claims. Or. Rev. Stat. 12.080(1) ("An action upon a contract or liability, express or implied . . . shall be commenced within six years."). As a result, the entire time period at issue in Mr. Robinson's motion, 1989-1996, is beyond the statute of limitations, and he has the burden of providing the absence of latches. Despite the burden shifting to Mr. Robinson, defendants attempt to prove the other two elements of laches by explaining why Mr. Robinson should be charged with knowledge and by showing how they have been prejudiced by Mr. Robinson's delay. As to the former, defendants cite Mr. Robinson's own declaration where he states Mr. Glasser had control of his day-to-day finances and promised to teach him how to manage his finances, but never did. Robinson Decl. at ¶¶ 7-8. In addition, Mr. Robinson avers that he was not forwarded his bill statements, had no information about how his money was spent, and was not given copies of his tax returns. *Id.* at ¶¶ 10, 12, 17. Under these circumstances, defendants claim Mr. Robinson had a duty to inquire. Defendants also assert Mr. Robinson's delay has resulted in unfair prejudice to them because they cannot provide an accounting for 1989-1996 due to the loss of critical documentary evidence. Defendants, per their normal document

retention policy, destroyed Mr. Robinson's records for the years at issue. This destruction of documents was in accord with Oregon's Code of Professional Conduct for accountants, which states that "[n]o working papers shall be required to be maintained longer than seven years." Or. Admin. R. 801-030-0015(2)(e)(B). Consequently, it appears latches applies here.

Mr. Robinson relies on *Duniway v. Barton*, 267 P.2d 930 (Or. 1951), for the assertion that laches cannot bar a claim for an accounting because a "fiduciary must account for the entire time of the relationship, even if it extends beyond the analogous limitation period." Pl.'s Reply at 4. *Duniway*, however, reaches a different conclusion then the one offered by Mr. Robinson. First, in rejecting the defense of laches, the court noted the evidence provided by the plaintiff established that she did not have knowledge that defendants were defrauding her until after the fraud was well underway, and the defendants' "continuing fraud, misrepresentations and promises excused her failure to learn the facts before that time." *Duniway*, 267 P.2d at 937. Moreover, because the plaintiff was not charged with knowledge, "[t]he suit was brought within the time limited by the analogous statute of limitations" and the burden to prove the absence of laches did not shift to plaintiff. *Id.* In addition, the defendant could not show prejudicial harm caused by plaintiff's delay in bringing suit. Thus, contrary to Mr. Robinson's assertion, *Duniway* did not hold that a fiduciary must account for the entire time of the relationship, even if it extends beyond the analogous limitation period, simply because of the relationship itself. Rather, the court held that if a plaintiff does not "in fact know what was going on" due to a continuing fraud that continued beyond the analogous limitation period, the plaintiff is not chargeable with knowledge and a defense of laches fails. *Id.*

Mr. Robinson also argues the defense of latches does not apply here because he trusted

PAGE 9 - OPINION AND ORDER

defendants and therefore is not chargeable with knowledge.  In spite of his assertions,

Mr. Robinson has failed to provide facts establishing a continuing fraud sufficient to excuse his

failure to exercise due diligence in becoming aware of the purported violations.  Rather, as

discussed above, by his own admissions he had "knowledge of facts which would have put a duty

to inquire on a person of ordinary intelligence."  *Nyman*, 575 P.2d at 340.  For example, his

complaints that he did not receive certain bill statements and copies of his tax returns.  Thus,

resolving the facts in defendants' favor, the defense of latches is established.  Mr. Robinson's

claim for an accounting for 1998-1996 falls outside of the analogous statute of limitations, he is

chargeable with knowledge before 1998, and defendants have suffered prejudice as a result of the

delay.

## CONCLUSION

Mr. Robinson's motion for partial summary judgment (#28) is DENIED on two bases.

First, an issue of material fact exists regarding the amount entrusted to defendants for the time

period 1989 through 1996.  And second, defendants have established the affirmative defense of

latches.[2]  Defendants' motion for partial summary judgment (#44) is GRANTED.


DATED this   28th   day of June, 2006.



/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court

_____

[2] Defendants failed, in their own motion, to move for summary judgment on the basis of latches.

PAGE 10 - OPINION AND ORDER